**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
By:      Gerard P. Norton, Esq.
          Alain Leibman, Esq.
          Joseph Schramm, III, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ  08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469
*Attorneys for Plaintiff American Institute*
 *of Certified Public Accountants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>              Plaintiff,<br><br>    v.<br><br>KAPLI INC. and KWANG WOO NAM,<br><br>              Defendants. | Civil Action No.<br><br><br>**VERIFIED COMPLAINT** |

        Plaintiff, American Institute of Certified Public Accountants ("AICPA"), a 501(c)(6) not-for-profit corporation organized and existing pursuant to the laws of the District of Columbia, with a place of business located at 100 Princeton South Corporate Center, 200 Princeton South Corporate Center, Ewing, New Jersey 08628, by and through its attorneys, brings this action against defendants KAPLI Inc. ("KAPLI"), a New York corporation with a place of business located at 227 Grand Avenue, Palisades Park, New Jersey 07650, and Kwang Woo Nam ("NAM"), a resident of Leonia, New Jersey, and hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for damages and injunctive relief involving the infringement by defendants KAPLI and NAM (collectively, "Defendants") of copyrighted, secure questions and test items from the Uniform Certified Public Accountant (CPA) Examination.

2.     Defendants have engaged in the unauthorized disclosure and use of copyrighted and secure active Uniform CPA Examination questions and test items.   Defendants have solicited, obtained, copied, and distributed active Uniform CPA Examination questions and test items from individuals who had taken the Uniform CPA Examination.   What is known of the Defendants' infringing activity has already caused the AICPA to re-write examinations and abandon questions and test items developed at great expense and effort, and threatens the integrity of the single foundational examination for CPA licensure across the United States and around the world.

3.     The AICPA develops and owns the copyright to the Uniform CPA Examination, which is a uniform examination that constitutes the most significant component of the requirements for licensure as a Certified Public Accountant in all fifty states, the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam and the Commonwealth of Northern Mariana Islands.

4.     NAM is a principal and/or employee of KAPLI.   KAPLI operates a live and internet-based commercial test preparation program that purports to assist prospective examinees in preparing to take the Uniform CPA Examination.   As part of that program and for their economic benefit, KAPLI and NAM have improperly solicited, obtained, copied and distributed copyrighted Uniform CPA Examination materials belonging exclusively to the AICPA.

## JURISDICTION AND VENUE

5.      This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*  This Court has original and exclusive jurisdiction over copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      The Court has original jurisdiction over the AICPA's state law claim for unfair competition under 28 U.S.C. § 1338(b).  The Court has supplemental jurisdiction over the AICPA's state law claim for tortious interference with contracts under 28 U.S.C. § 1367(a).

7.      The Court has personal jurisdiction over KAPLI based on one or more of the following activities: (a) KAPLI transacts business within and avails itself of this District; (b) KAPLI contracts to render services within this District; (c) KAPLI expects or reasonably should expect its acts to have legal consequences in this District;  (d) KAPLI engages in a persistent course of conduct in this District; (e) KAPLI engages in commercial transactions with residents of New Jersey; (f) KAPLI engages in ongoing interactions and communications with residents of New Jersey through the use of its website; and (g) KAPLI engages in acts interfering with contracts entered into by the AICPA, a Washington, D.C., company with an office located in Ewing, New Jersey, and individuals who take the Uniform CPA Examination in this District.

8.      This Court has personal jurisdiction over NAM based on one or more of the following activities: (a) NAM transacts business within and avails himself of this District; (b) NAM contracts to render services within this District; (c) NAM expects or reasonably should expect his acts to have legal consequences in this District;  (d) NAM engages in a persistent course of conduct in this District; (e) NAM engages in commercial transactions with residents of New Jersey; (f) NAM engages in ongoing interactions and communications with residents of New Jersey through the use of the KAPLI website; and (g) NAM engages in acts interfering with

contracts entered into by the AICPA, a Washington, D.C., company with an office located in Ewing, New Jersey, and individuals who take the Uniform CPA Examination in this District.

9.      Venue in this District is proper under 28 U.S.C. §§ 1391(b) and 1400(a). Defendants are doing business in this District, they and their agents may be found within this District, and a substantial part of the events giving rise to the AICPA's claims occurred in this District.

**PARTIES**

10.      The AICPA is a not-for-profit Washington, D.C., corporation with an office in Ewing, New Jersey.  The AICPA is the national professional membership organization of Certified Public Accountants.  Among other things, the AICPA is responsible for examination content, development, and scoring of the Uniform CPA Examination.

11.      Defendant KAPLI Inc. is a New York corporation with its principal place of business at 16 West 32nd Street, Room 306, New York, New York.  It also has offices in Palisades Park, New Jersey; Flushing, New York; Annandale, Virginia; Los Angeles, California; and Anaheim, California.  It operates commercial test preparation review programs for the CPA, Enrolled Agent (EA), Chartered Financial Analyst (CFA) and Actuarial licensure examinations at all of the above locations.  On information and belief, KAPLI stands for Korean American Professional Learning Institute.

12.      Defendant Kwang Woo Nam is a principal and/or employee and lecturer for KAPLI.  On information and belief, he resides at 199 Christie Heights Street, Leonia, New Jersey 07605, among other locations.

## FACTUAL ALLEGATIONS

**A.     The AICPA and the Uniform CPA Examination**

13.     The AICPA was founded in 1887 and, upon its creation, established accountancy as a profession distinguished by rigorous educational requirements, high professional standards, a strict code of professional ethics, licensing status and a commitment to serving the public interest.   Today, the AICPA is the world's largest association representing the accounting profession, with nearly 370,000 members in 128 countries.

14.     Among other activities, the AICPA develops and owns all rights in and to the Uniform CPA Examination.   The AICPA is responsible for, among other things, content development and scoring with respect to the Uniform CPA Examination.

15.     Each state has a Board of Accountancy or like body (collectively, "Boards").   The Boards are independent of the AICPA, and are generally created by state statute.   Each Board determines its own requirements for licensure as a Certified Public Accountant.   Since 1952, every jurisdiction has used the Uniform CPA Examination as a component of its CPA licensure admissions process, including the Board for the State of New Jersey.

**B.     Design of the Uniform CPA Examination.**

16.     The Uniform CPA Examination is designed to provide reasonable assurance to the Boards in protection of the public interest that those who pass the Uniform CPA Examination possess the level of technical knowledge and the skills necessary for initial licensure.   The public interest is protected when only qualified individuals are admitted to the profession.

17.     The Uniform CPA Examination currently consists of four sections: Auditing and Attestation (AUD), Business Environment and Concepts (BEC), Financial Accounting and

Reporting (FAR), and Regulation (REG).  These four sections represent a total of 14 hours of testing.

18.     All four sections of the Uniform CPA Examination contain multiple-choice questions (MCQs).  The AUD, FAR, and REG sections also have Task-Based Simulation (TBS) questions; BEC has written communication questions, but no TBS questions.

19.     The TBS questions in the AUD, FAR, and REG sections are presented as case studies, followed by tabular grids which test candidates' knowledge and skills by generating responses to more complex questions.

20.     Advance knowledge of specific multiple-choice questions or Task-Based Simulation questions, or the precise subject areas they are designed to test, would afford a test-taker a significant advantage and would undermine the examination's ability to genuinely test the applicant's level of technical knowledge and skills.

21.     The development of Uniform CPA Examination questions is a lengthy, painstaking and expensive process involving numerous individuals and several levels of review and analysis.  This process begins with expert input from multiple groups of CPAs who work to draft a set of statements defining the knowledge and skills that are required of entry-level CPAs, which is compiled in an outline.  The outline is then sent to practicing CPAs in a survey that asks each survey respondent to rate each statement on a number of criteria, such as relevance, importance and frequency.  The survey data is then gathered and evaluated by committees of CPAs, which recommend how statements should be organized for testing, as well as the relative proportion that each area should represent on the Uniform CPA Examination.  The committees' recommendations are then sent for review by the Board of Examiners, which is composed of CPAs and other experts in testing, and are also sent out to a wide audience of stakeholders in

what is known as an "exposure draft."  Comments are collected from the stakeholders and presented to the Board of Examiners for a final review.  At this point, an outline of content and skills eligible for testing is approved for use.

22.    After finalizing the outline of knowledge and skills eligible for testing, the AICPA begins the process of developing questions to measure that material.  First, the AICPA recruits CPAs to draft test questions and provides the CPAs with training in how to write test questions based on the approved outline of knowledge and skills.  Test questions are drafted for initial review and subsequently reviewed for content and editorial quality and revised, as necessary.  After initial review, the questions are presented to committees of CPAs for review based upon, among other things, accuracy, relevance, and match to specifications.  The committee may accept, revise, or reject a question.

23.    Next, test questions are revised, based on the committee review, for pre-testing. Pre-testing is done on operational test items.  That is, some of the questions that each Uniform CPA Examination candidate takes are pre-test questions that do not contribute to the candidate's score.  Pre-test data are statistically analyzed to identify questions for further review before they are used as operational questions which contribute to candidate scores.

24.    After questions are approved for use based on pre-testing, tests are assembled for administration.  Test forms are assembled to meet specifications on a number of dimensions, with the goal being that test forms from examination to examination are comparable to each other.  After assembly, the test forms are checked to ensure that they meet the specifications, and are then reviewed again in final preparation for test administration.

25.    At present, it costs approximately $2,500 to develop a single question/task of the quality necessary to be administered on the Uniform CPA Examination. This cost does not pertain to research questions or written communication question types.

**C.    Copyright Ownership of the Uniform CPA Examination.**

26.    It has been, and will continue to be, the regular practice of the AICPA to register Uniform CPA Examination questions and test items for each section of the Uniform CPA Examination with the Register of Copyrights pursuant to and in compliance with the secure-test regulations issued by the United States Copyright Office.

a.    The "TX" registration numbers assigned by the United States Copyright Office to Uniform CPA Examination test items and/or sets of computer-based items registered by AICPA for the Regulation (REG) section of the examination include the following: TXu 1-733-026 (1/2/2010 through 12/31/2010), TXu 1-733-133 (1/2/2009 through 12/31/2009), TXu 1-596-767 (1/2/2008 through 12/31/2008), and TXu 1-577-171 (1/2/2007 through 12/18/2007.

b.    The "TX" registration numbers assigned by the United States Copyright Office to Uniform CPA Examination test items and/or sets of computer-based items registered by AICPA for the Auditing and Attestation (AUD) section of the examination include the following: TXu 1-733-024 (1/2/2010 through 12/31/2010), TXu 1-732-982 (1/2/2009 through 12/31/2009), TXu 1-596-760 (1/2/2008 through 12/31/2008), TXu 1-577-155 (1/2/2007 – 12/28/2007), and TXu 1-329-087 (1/2/2006 through 12/29/2006).

c.    The "TX" registration numbers assigned by the United States Copyright Office to Uniform CPA Examination test items and/or sets of computer-based items registered by AICPA for the Financial Accounting and Reporting (FAR) section of the examination include the following: TXu 1-733-097 (1/2/2009 through 12/31/2009), TXu 1-596-758 (1/2/2008

through 12/31/2008), TXu 1-577-166 (1/2/2007 through 12/28/2007), and TXu 1-329-088 (1/2/2006 through 12/29/2006).

        d.    The "TX" registration numbers assigned by the United States Copyright Office to Uniform CPA Examination test items and/or sets of computer-based items registered by AICPA for the Business Environment and Concepts (BEC) section of the examination include the following: TXu 1-733-126 (1/2/2009 through 12/31/2009), and TXu 1-596-764 (1/2/2008 through 12/31/2008).

        27.    At all relevant times, the AICPA has been the sole owner and holder of all rights, title and interest in and to the copyrights in the Uniform CPA Examination questions and test items at issue, subject only to certain non-exclusive licenses that authorize third parties, known as Authorized Review Course Providers, to use for examination preparation courses sample Uniform CPA Examination questions that have been retired by the AICPA and will not be used in future testing.  KAPLI does not have a non-exclusive licensing agreement, nor a contract with the AICPA, and is therefore not an Authorized Review Course Provider.

        28.    The Uniform CPA Examination test items and questions are original, copyrightable materials, and the AICPA has complied in all respects with the requirements of the Copyright Act, 17 U.S.C. § 101 *et seq*.  The AICPA therefore enjoys certain exclusive rights with respect to the test and the test questions, including the exclusive right to copy, distribute, display, and publish the tests and test questions; to authorize others to do so; and to prepare derivative works.

        29.    The Uniform CPA Examination is a "secure" test, which means that the questions and test items on the examination are confidential, that they have not been previously disclosed by the AICPA to the general public, and that the administration of the examination is secure.

30.     Confidential Uniform CPA Examination questions are not intended to be made available to the public except during actual test administrations or when the AICPA elects to retire the questions or under such other circumstances as AICPA has authorized.  Unauthorized disclosure of secure test items compromises the integrity of future examinations; causes significant financial harm to the AICPA; and undermines the integrity of the licensing process for CPAs globally.

31.     The current "Uniform CPA Examination Candidate Bulletin" (the "Bulletin") includes the following "CONFIDENTIALITY AND BREAK POLICY AGREEMENT," which is also referred to as the "Policy Statement and Agreement Regarding Exam Confidentiality and the Taking of Breaks":

> Before you begin your examination, you will be required to accept the terms of the following confidentiality and break policy statement. If you do not accept the statement, your test will be terminated and your test fees will be forfeited.
>
> **Policy Statement and Agreement Regarding Exam Confidentiality and the Taking of Breaks**
>
> *I hereby agree that I will maintain the confidentiality of the Uniform CPA Examination. In addition, I agree that I will not:*
>
> • *Divulge the nature or content of any Uniform CPA Examination question or answer under any circumstance*
> • *Engage in any unauthorized communication during testing*
> • *Refer to unauthorized materials or use unauthorized equipment during testing; or*
> • *Remove or attempt to remove any Uniform CPA Examination materials, notes, or any other items from the examination room*
>
> *I understand and agree that liability for test administration activities, including but not limited to the adequacy or accuracy of test materials and equipment, and the accuracy of scoring and score reporting, will be limited to score correction or test retake at no additional fee. I waive any and all right to all other claims.*

*I further agree to report to the AICPA any examination question disclosures, or solicitations for disclosure of which I become aware.*

*I affirm that I have had the opportunity to read the Candidate Bulletin and I agree to all of its terms and conditions.*

*I understand that breaks are only allowed between testlets. I understand that I will be asked to complete any open testlet before leaving the testing room for a break.*

*In addition, I understand that failure to comply with this Policy Statement and Agreement may result in invalidation of my grades, disqualification from future examinations, expulsion from the testing facility and possible civil or criminal penalties.*

*O I ACCEPT O I DECLINE*

32.     The Bulletin is posted on the AICPA's website and is available to examinees well in advance of their test date.  All examinees must agree to abide by the policies set forth in the Bulletin in order to register for the Uniform CPA Examination. The information is provided within the Bulletin in order to provide the potential candidate with all of the available background information prior to taking the Uniform CPA Examination. This information includes, the Confidentiality Agreement, as well as Candidate Misconduct, Cheating, and Copyright Infringement, and Grounds for Dismissal.

33.     In addition to the above CONFIDENTIALITY AND BREAK POLICY AGREEMENT, the Candidate Bulletin includes a section regarding additional candidate conduct of which all candidates should be fully and consciously aware at all times:

> **Candidate     Misconduct,     Cheating,     Copyright Infringement**
> The boards of accountancy, NASBA, and the AICPA take candidate misconduct (including cheating on the Uniform CPA Examination) very seriously. If a board of accountancy determines that a candidate is culpable of misconduct or has cheated, the candidate will be subject to a variety of penalties including, but not limited to, invalidation of grades, disqualification from subsequent

11

examination administrations, and civil and criminal penalties. In cases where candidate misconduct or cheating is discovered after a candidate has obtained a CPA license or certificate, a board of accountancy may rescind the license or certificate.

\*      \*      \*

All examination materials are owned and copyrighted by the AICPA. Any reproduction and/or distribution of examination materials, including memorization, without the express written authorization of the AICPA is prohibited. This behavior infringes on the legal rights of the AICPA and, in addition to the penalties listed above, the AICPA will take appropriate legal action when any copyright infringements have occurred.

### *Grounds for Dismissal*

If you engage in misconduct or do not follow the test center regulations, the test center staff may dismiss you from the examination or you may have your scores canceled by your board of accountancy. The following are examples of behavior that will not be tolerated during the examination:
• Repeating acts of misconduct after receiving prior warning(s)
• Attempting to remove or removing examination questions from the testing room by any means
• Copying, writing or summarizing examination questions on any material other than the scratch paper issued to you

\*      \*      \*

34.    In order to help prospective examinees familiarize themselves with the types of questions contained on the Uniform CPA Examination and otherwise prepare for the examination, the AICPA itself publishes previously administered, "retired" Uniform CPA Examination questions.  The AICPA exclusively has the discretion to determine which, if any, Uniform CPA Examination questions are retired from examination use.  For example, the AICPA compiles these previously administered, "retired" CPA examination materials and sells them to authorized, licensed Authorized Review Course Providers for use as educational materials for the courses they teach to potential CPA candidates in preparation of taking the examination; instructors of Continued Professional Educational courses; and textbook

publications for classroom instruction. The AICPA also provides "retired" questions within professional publications, such as the *Journal of Accountancy, The New Jersey Society of Certified Public Accountants, The Pennsylvania Institute of Certified Public Accountants,* as well as other state society publications and bulletins.

35.     In addition to the above, "retired" examination question are also used by the AICPA in order to help prospective examinees familiarize themselves with the types of questions contained on the Uniform CPA Examination and otherwise prepare for the examination. To familiarize candidates with the formation and functionality of the Examination, sample tests and a tutorial are provided on the AICPA website.

**D.      Administration of the Uniform CPA Examination.**

36.     The Uniform CPA Examination is administered during the first two months of each calendar quarter at test centers maintained and operated by an AICPA vendor throughout the United States in a computer-based (rather than paper-based) format. Since April 2004, the computer-based Uniform CPA Examination has been administered over one million times.

37.     The vendor that administers the Uniform CPA Examination for the AICPA offers each administration of the examination on multiple dates spanning the first two months of each calendar quarter. For example, the first quarter administration of the Uniform CPA Examination for 2011 was administered throughout the months of January and February 2011. The second quarter administration of the Uniform CPA Examination for 2011 was administered throughout the months of April and May 2011. The next administration of the Uniform CPA Examination will be offered throughout July and August 2011.

38.     On January 2, 2011, beginning with the first quarter administration of the Uniform CPA Examination in 2011, the AICPA launched a new format for Uniform CPA

Examination.  The AICPA intends to use this new format for several years until the next update to the Uniform CPA Examination.

**E.**     **Defendants' Unlawful Conduct**

39.     Defendants have actively solicited KAPLI students to send to KAPLI, through NAM, copyrighted and secure active questions and test items from the Uniform CPA Examination which they have recently taken.  KAPLI has compiled these copyrighted and secure questions and test items from the Uniform CPA Examination based upon comments from its students that have taken the Uniform CPA Examination, reconstructed the copyrighted and secure questions and test items from the Uniform CPA Examination as faithfully as they are able to do from the test-takers' recollections and comments, and then disclosed those Uniform CPA Examination questions and test items to further individuals then enrolled in KAPLI's Uniform CPA Examination review program or who purchased KAPLI's Uniform CPA Examination materials.  Defendants and their agents ask for and encourage such debriefings, and conduct lectures using questions and test items which replicate as closely as possible from the collective memory of test-takers the tabular grids and subject areas on the most recently-administered examination.

40.     The AICPA received information late in 2010 from a confidential source that KAPLI, which markets itself to Korean-speaking persons wishing to study for portions of the Uniform CPA Examination, and NAM, an individual affiliated with KAPLI, were utilizing actual, copyrighted examination questions in their activities, and that KAPLI did so without authorization from the AICPA.

41.     In response to the information received from this confidential source, the AICPA engaged Kroll Associates, Inc., an investigative firm, to undertake a background investigation of KAPLI and NAM, and then to undertake an undercover investigation.

42.     The initial background investigation revealed the following, among other information: (a) a media source had reported NAM's claim that 80% of KAPLI's students who passed the Uniform CPA Examination had no background in accounting; (b) NAM is noted to be a CPA on the KAPLI website; (c) the KAPLI website states that KAPLI stands for Korean American Professional learning Institute; and (d) KAPLI's web site indicates that it has seven offices in the United States, including an office at 227 Grand Avenue, Suite H, Palisades Park, New Jersey.

43.     On October 1, 2010, an undercover investigator from Kroll, fluent in Korean, called the KAPLI office in New York, New York, and learned from a staffer named Woo Yong Nam that KAPLI's New York City location provides only lectures in Korean, but that KAPLI's offices in New Jersey and Virginia provide lectures in both English and Korean.

44.     On October 27, 2010, the undercover investigator preliminarily reviewed KAPLI's website on cafe.naver.com/kapli, which is apparently used by KAPLI faculty and administration to communicate regarding, among other things, their job duties for KAPLI and to provide weekly summary reports of duties conducted.  Thereafter, the undercover investigator continued to periodically monitor the KAPLI website.

45.     Several items on the cafe.naver.com/kapli website contain references to potential extraction and/or dissemination of materials "brain-dumped"[1] by students who had recently taken sections of the Uniform CPA Examination.

46.     There were also website references to the tight control which KAPLI maintains over the "afterward comments" of its students who have taken the Uniform CPA Examination and of DVD's containing recorded lectures teaching the examination questions and test items. For example, an April 20, 2010 message posted by "namlaw," which is, upon information and belief, the account used by NAM, warned KAPLI staff that:

> [N]ot a single DVD, other than those pertaining to multiple choice lectures, should ever be taken outside school premises. . . . and **if AICPA** or a CBT center (Computer Based Testing center) **became aware of these materials, [literally; he or she; the school] would undoubtedly [100%] be <u>subjected to criminal punishment.</u> <u>This is a very serious matter.  There is no doubt that KAPLI</u> <u>will be shutdown and this could lead to dramatic implications</u>** . . . Of course, [we; the school] must strictly manage the "afterward comments" provided by students who had taken the exams.  These must be stored in the cabinet and make sure that they are not exposed outside. . . ." (emphasis added).

47.     An August 3, 2010 message post to the cafe.naver.com/kapli website by "happy 81 (ra7327)," concerning administrative guidelines for KAPLI staff members, stressed that the staff should strictly manage "post-exam comments" and emphasized that these materials "should never be leaked to other places [outside school premises] and employees should make sure that other people (other than KAPLI students) do not know about these materials."

---

[1] Writings on the cafe.naver.com/kapli website are almost exclusively in Korean.  The exact Korean word used on the cafe.naver.com/kapli website to describe "brain-dumped" materials is "후기 (Hoo Gi)," which may mean "afterward comments," or "records (or notes) authored after an event (or experience)."

48.     A November 11, 2010 message posted by "namlaw" reiterated the importance of not releasing outside the KAPLI premises any Korean-language DVDs:

> [A]ll Korean language DVD's, except for those pertaining to AP [Accounting Principles] and multiple choice questions, may never be leased [rented] out to be viewed at home.  In particular, **those DVDs pertaining to Review and Simulations lectures may (absolutely) never be rented out to be viewed at home. Recently, <u>AICPA has been issuing serious warnings about duplication and leakage of exam questions and it is in fact conducting investigations regarding these matters.</u>**  (emphasis added).

49.     Also available on the <u>cafe.naver.com/kapli</u> website are emails, including one from a student whose initials are "HS" to namlaw@hotmail.com, dated November 18, 2010. According to the email, "HS" had sat for the Regulation portion of the Uniform CPA Examination and the email provided details as to what he/she remembered from the examination.

50.     At the time the undercover investigator was gathering information on KAPLI's operations, KAPLI offered an Accounting Principles course (for which it then charged a fee of $500), a Business Law course (for which it then charged a fee of $1,700, as part of a "Regulatory course package"), and a comprehensive review course package (for which it then charged $5,700).  KAPLI's review courses are primarily presented through a combination of live lectures and pre-recorded DVD lectures shown to KAPLI students by KAPLI staff at KAPLI's facilities. KAPLI also permits students to access certain review materials on the internet through KAPLI's online course package, which was offered by a KAPLI staff member to the undercover investigator for an extra fee of $500.

51.     The undercover investigator enrolled at the KAPLI New York location in order to take the Accounting Principles course, beginning in late January 2011.  Beginning in February 2011, he also attended Business Law courses, which were to be taught by NAM.

52.     To pay for the courses, the undercover investigator provided KAPLI with checks, which were deposited by KAPLI in an account in the name of KAPLI Inc. at the Bank of America in New York, New York.

53.     At least two individuals from KAPLI made statements to the undercover investigator indicative of their knowledge that KAPLI was improperly using actual Uniform CPA Examination questions in its courses.

54.     For example, on February 9, 2011, during a session of the Accounting Principles course, given as a live lecture by Jong Wook Noh, Mr. Noh told the undercover investigator in substance that he should, at least one month before the actual examination, watch the review DVD's created by KAPLI.  Mr. Noh stated that the review DVDs provided explanations on sample questions likely to appear on the examination.  Mr. Noh replied "yes" when asked by the undercover investigator if the KAPLI DVDs contained explanations regarding questions from prior examinations.

55.     In addition, on February 15, 2011, while attending a session of the Accounting Principles course, the undercover investigator spoke with a KAPLI staff member about taking DVD's home to review.  The staff member stated that KAPLI prohibits students from borrowing its DVD's since the school and/or its staff could be subject to police investigations if some of those DVD's are leaked.

56.     NAM personally made statements on more than one occasion indicative of his knowledge that he and KAPLI were improperly using actual Uniform CPA Examinations questions and test items in their courses.

57.     On February 21, 2011, NAM gave a lecture at KAPLI's New York office as part of its Business Law Course.  In the course of his lecture, NAM identified specific topics in the

business law materials which were unlikely to be, or would definitely not be, on the actual 2011 Uniform CPA Examination, including the following: (a) he stated that promissory estoppel, covered in the KAPLI course textbook, will not be tested on the exam; and (b) he stated that the students could ignore textbook sections relating to property law, insurance law, and debtor-creditor relationships, since they were unlikely to appear on the 2011 examination then being administered.

58.    On February 24, 2011, KAPLI presented at its New York office a DVD lecture described as having been given the day before by NAM at KAPLI's New Jersey location.  In the course of this lecture, NAM made several references to specific topics in the business law materials which would be tested on the actual 2011 Uniform CPA Examination.

59.    For example, NAM explained that only three of four areas relating to the Statute of Frauds – contracts relating to real estate, contracts that cannot be fulfilled in one year, and contracts for goods worth more than $500 – are likely to appear on the test.

60.    In subsequent lectures presented by KAPLI, NAM made additional references to specific topics in the business law materials which would be tested on the actual 2011 Uniform CPA Examination.  For example, in a live lecture presented by NAM at KAPLI's New York office on March 7, 2011, NAM stated that, as to negotiable instruments under Article 3 of the Uniform Commercial Code, the actual Uniform CPA Examination would involve a picture or drawing of a personal check with two different currency amounts written on the line underneath the name of the payee and the numerical box on the right-hand side of the check; he predicted that the test-taker would be asked if the personal check should be deemed invalid, and that the correct answer would be in the negative, since the check was still valid.

61.    In the same March 7, 2011 session, NAM told the students how to access KAPLI's website through use of a log-in account, because KAPLI would begin to regularly upload sample questions related to the tax and business law subjects tested on the examination. He also stated that he would have a better idea about the 2011 version of the Uniform CPA Examination by late March or early April 2011.

62.    Specifically, in the March 7, 2011 session, NAM asked the students to send him via email any questions or problems they might be able to recall after taking the actual examination.  Specifically, he stated that he was not forcing students to do so, and that it was illegal to do so, but "if you really feel the urge to send me what you saw on the exam, send me an email."

63.    Further evidence of NAM's knowledge of the illegal nature of soliciting and distributing secure and copyrighted portions of the Uniform CPA Examination came during a March 10, 2011 online lecture about the new format of the Regulation (REG) section of the Uniform CPA Examination.  NAM stated that the lecture was not being recorded by KAPLI, as the contents of the lecture may violate AICPA rules and lead to cancellation of CPA licenses. NAM said that he would try to provide his "feelings" about what will appear on the new examination.

64.    As set forth above, KAPLI and NAM were providing their students with infringing copies of the Uniform CPA Examination questions and test items both during the first quarter 2011 administration of the new examination and immediately prior to the second quarter administration of the examination.

65.    NAM proceeded in the March 10, 2011 lecture to provide great detail about what precisely would appear on the new examination.  He stated the following, among other things:

20

(a) there will be no more than two research questions, which would very likely pertain to two specific topics; (b) there would be questions about pensions, and gave details of the structure and nature of those questions; (c) there will be questions concerning Form 1041, involving profits incurred after death; (d) there will be questions involving stock redemptions; (e) there will likely be questions about gifts and trusts; (f) there will be questions pertaining to incentive stock options; and (g) there would only be one or two questions relating to installment payments.

66.     NAM's March 10, 2011 online lecture was in part recorded surreptitiously by the undercover investigator and his colleagues, including capturing screenshots of the material presented by NAM, and of pre-prepared questions, answers, and test items which appeared on whiteboards shown during NAM's lecture.  These screenshots reflected that NAM was using pre-prepared tabular grids substantially similar to those appearing on the Uniform CPA Examination administered during the first quarter of 2011.  These screenshots were provided to the AICPA for review and verification as to whether the information represented or depicted questions currently being tested in the Regulation section of the Uniform CPA Examination. The results of the AICPA review and verification are set forth below in ¶¶ 68 – 72.

67.     In addition to NAM's multiple admissions that he and KAPLI have been making, and continue to make, unauthorized and improper use for their own profit of AICPA copyrighted materials, a comparative review of the KAPLI materials and actual Uniform CPA Examination test materials corroborates the infringement.

68.    The following question actually appeared on the Uniform CPA Examination administered during the first quarter of 2011:

**Individual Deductions**
**Scroll down to complete all parts of this task.**

**The Internal Revenue Service (IRS) has notified Smith that his *U.S. Individual Income Tax Return* (Form 1040) for year 2 has been selected for examination.  Smith prepared the tax return without professional assistance.  Smith engaged a CPA to review the details of the tax return and to represent him before the IRS.**

**Listed in the table below are the amounts that Smith claimed as deductions for year 2.  Smith has provided the CPA with explanations and worksheets for each entry, shown in columns A and B.**

**In column C, enter the correct amount of the allowable deduction.  Your entry may be the same amount as reported by Smith (if Smith's entry is correct) or a revised amount (if Smith's entry is incorrect).  Enter all amounts as positive values.  If a response is zero, enter a zero (0).**

| A | B | C |
|---|---|---|
| | **Deductions** | |
| **Item and amount entered by Smith** | **Explanation of transactions** | **Correct amount as determined by CPA** |
| **Medical expenses** $6,900 (prior to 7 1/2% limitation) | Smith's list of unreimbursed, after tax **medical expenses** includes: Medical **insurance premiums** $3,900 Removal of tattoos: $250 Medical and dental examinations:  $1,000 **Over-the-counter** medications:  $50 Prescription **drugs**:  $450 Emergency room visit for leg injury:  $1,250 | |
| **Interest expense** $4,100 | Smith's list of **interest** expense includes: Home **mortgage interest**:  $3,100 **Interest** assessed on late payment of **tax**es: $200 **Credit card** finance **charges**: $800 A review of Smith's Form 1098 indicated a payment of $3,600 **interest** on the **mortgage** loan. | |
| **Gifts to charity** $5,855 | Smith's list of cash gifts to charity includes: **Church**: $3,000 Red Cross:  $500 Local **museum**:  $805 Local hospital: $750 Cash gift to a needy neighbor: $800 All of Smith's documentation supports the amounts deducted except a letter from the church acknowledging $3,250 of **contributions** received and a letter from the **museum** indicating $ 850 of **contributions**. | |

*{Question from actual Uniform CPA Examination continues on next page}*

| | | |
|---|---|---|
| **Taxes Paid**<br>**$6,400** | Smith's list of taxes paid includes:<br>**Real estate taxes: $3,000**<br>**State income taxes withheld:$2,000**<br>**State estimated income taxes paid in year 2:  $500**<br>**State extension tax payment made in year 2 for Smith's year 1 state tax return:  $700**<br>**Local assessment for sidewalk improvements: $200** | |
| **Casualty losses**<br>**$4,000**<br>**(prior to 10% AGI limitation and $100 floor)** | Smith purchased a used motor van in December, year 2, that was completely destroyed in a fire the following day.  A review of Smith's file indicated that the cost and fair market value of the van were $24,000. Smith filed a claim with the insurance company.<br>The claim was settled for $20,000 in June of year 3 (after the year 2 tax returns were filed). | |
| **Other miscellaneous deductions-gambling losses $16,000** | Smith's worksheet summarized details of **gambling** losses:<br>Lottery:<br>**Lottery ticket purchases:  $8,700**<br>**Lottery ticket winnings:  $10,800**<br>Casinos:<br>**Wagers placed:   $14,200**<br>**Casino winnings:   $6,500**<br>Other **gambling**:<br>**Cost of bingo games:   $1,200**<br>**Winnings from bingo games:  $0**<br>**Horse race bets placed:        $7,000**<br>**Winnings from horse racing:  $3,200** | |
| **Certain miscellaneous deductions**<br>**$1,800**<br>**(prior to 2% AGI limitations)** | Smith paid the following invoices during year 2:<br>**Legal fees for the preparation of last will and testament:  $2,000**<br>**Defensive driving course fee to reduce auto premiums: $200**<br>**Safe deposit box used for storing U.S. Savings Bonds: $400**<br>**Unreimbursed union dues: $600**<br>**Unreimbursed "steel-toed" shoes and hard hats used in construction industry:  $500**<br>**Annual wholesales grocery membership fee: $100** | |

On March 10, 2011, just days after the first administration of the new Uniform CPA Examination format ended in February 2011, KAPLI and NAM distributed its copyrighted contents to KAPLI students.  For example, the following question was presented by KAPLI during NAM's March 10, 2011 lecture concerning the Regulation section of the Uniform CPA Examination (words in red are those appearing identically in both the actual CPA examination

question/test item and in KAPLI's infringing version, reconstructed from the "brain-dumps" of recent KAPLI test-takers)[2]:

**Itemized Deductions -Sch A**

: KAPLI
Real Time
Only

| A | B | C |
|---|---|---|
| Tax payer | Description | Correct Amount |
| Medical Expense (7.5% AGI Floor) | Over the counter drug<br>Vision surgery<br>Hair Plant<br>Disability Insurance Premiums | |
| Taxes Paid | State Property Taxes<br>Federal Income taxes | |
| Interest id | Mortgage prepayment penalty<br>Interest charged to credit card<br>Interest on income tax underpayment | |
| Charitable contributions (AGI Limit) | Church<br>Museum | |
| Casualty and Theft Losses | | |
| Miscellaneous Itemized Deductions (2% of AGI floor) | Safety deposit box rent<br>Grocery Store Membership Fee<br>Will Preparation fees | |
| Miscellaneous Itemized Deductions (No floor items) | Winning<br>Gambling cost<br>Gambling winning | |

The foregoing KAPLI question/test form closely models both the content and tabular format of an actual question that appeared on the Uniform CPA Examination administered during the first quarter of 2011. Critically, the format of the actual question appearing on the examination was unique and launched as part of a new examination format that launched on January 2, 2011. The question's tabular format is a part of the original work of authorship protected by the AICPA's copyrights.

---

[2] A screenshot of NAM's March 10, 2011 lecture displaying this question is attached hereto as Exhibit A.

Some of the most telling evidence of illegal copying by KAPLI and NAM is in the examples of "miscellaneous deductions" in the foregoing questions. Although the actual Schedule A to a U.S. Individual Income Tax return, Form 1040, lists no specific "miscellaneous deductions," both the actual Uniform CPA Examination question and the infringing KAPLI question list such "miscellaneous deductions" as will preparation fees, membership fees, and gambling winnings and losses.

69.    The following question also appeared on the Uniform CPA Examination administered during the first quarter of 2011:

**Tax Planning-Retirement Cals**

**Scroll down to complete all parts of this task.**

**Your client, Reggie, wants to invest $5,000 in a growth stock, and is considering each of the following investment alternatives in which to invest this amount:**

* **A growth stock that does not pay dividends and is held in a brokerage account.**
* **A traditional IRA that would be fully deductible in this current tax year.**
* **A Roth IRA for which Reggie qualifies each year.**

**Complete the table below by clicking each shaded cell and entering the appropriate value of each investment, and assume the following:**

* **A 25% federal tax rate for ordinary income.**
* **A 15% tax rate for long-term capital gains.**
* **A 6% return on investment yearly.**
* **A projected 7-year holding period (at which point the client will retire at age 65 and all funds will be withdrawn).**

**Round all values to whole dollars after all calculations are complete. If a response is zero, enter a zero (0).**

| Investment | Brokerage account | Traditional IRA | Roth IRA |
|---|---|---|---|
| **Tax savings on contribution for year 1** | 0 | | |
| **Future value of 6% for 7 years** | 1.50363 | 1.50363 | 1.50363 |
| **Tax on distribution** | | | |
| **Net distribution in year 7** | | | |

The following question was also presented by KAPLI during Nam's March 10, 2011 lecture[3]:

**IRA 1**                                                                    **: KAPLI**

| | Traditional IRA | Roth IRA | Stock |
|---|---|---|---|
| **Tax Saving** | | | |
| **7 yrs future value factor** | | | |
| **Tax (7 Distribution)** | | | |
| **Net Distribution** | | | |

Once again, the format of the infringing KAPLI question bears a striking resemblance to the question actually appearing on the Uniform CPA Examination.  The content of the KAPLI question also mirrors that of the actual examination question.  For example, although KAPLI and NAM could have selected any term of years, months, or days, for the required future value calculation, they knew from the "brain-dumping" test-takers that the time period actually tested was 7 years.  Candidates that are exposed to the format and content of examination questions prior to taking the examination gain a substantial and unfair advantage over candidates that do not know what subjects will be tested or the format in which they will be tested on the Uniform CPA Examination.  Candidates who are exposed to such information prior to taking the examination are more likely to arrive at the correct answer and to do so in less time than examination candidates that were not previously provided such advance information.

---

[3] A screenshot of NAM's March 10, 2011 lecture displaying this question is attached hereto as Exhibit B.

70.    Below is another example of a question that appeared on the Uniform CPA Examination administered during the first quarter of 2011:

**Pension Distributions**

**Multiple clients have received distributions from retirement accounts during the year. For each of the clients in column A:**

* **Enter the amount taxable to the client in column F;**
* **Enter the amount of penalty, if early withdrawal penalty applies, in column G**

**Enter all amounts as positive values. If a value is zero, enter a zero, (0).**

**Life expectancy tables are available in the Resources tab if required.**

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Client and age** | **Distribution Type** | **Distribution Amount** | **Basis** | **Distribution note** | **Taxable Amount** | **Amount of early withdrawal penalty** |
| **Client A; Age - 65; Spouse age-47** | Roth IRA | $10,000 | $4,000 | Client A began making these contributions seven years ago | | |
| **Client B; Age - 58; Single** | Traditional IRA | $32,000 with basis | $32,000 | Client B began making contributions 10 years ago. This was a one-time withdrawal for a personal purchase. | | |
| **Client C; Age - 38; Single** | Traditional IRA | $11,000 | $0 | Client C took the distribution to make a down payment toward the purchase of a first home. | | |
| **Client D; Age - 46; Spouse age- 44** | Lifetime annuity from a qualified employer retirement plan | $12,000 ($1,000 per month) | $84,000 | Estimated lifetime distributions: $360,000 | | |

27

The following question was presented by KAPLI during NAM's March 10, 2011 lecture, and closely tracks the foregoing question that actually appeared on the Uniform CPA Examination administered during the first quarter of 2011[4]:

**IRA 2**         **: KAPLI**

|  | **Distribution** | **IRA** | **Taxable** | **Penalty** |
|---|---|---|---|---|
| **Taxpayer A**<br>**L/O/62** |  |  |  |  |
| **Taxpayer B**<br>**L/O/60** |  |  |  |  |
| **Taxpayer C**<br>**L/O/38** |  |  |  |  |
| **Taxpayer D**<br>**L/O/57** |  |  |  |  |
| **Taxpayer E**<br>**L/O/45** |  |  |  |  |

The foregoing KAPLI and actual Uniform CPA Examination questions both test the same content, namely calculating the taxable amounts of IRA distributions and resulting penalties, if any, for taxpayers of various ages. Both questions do so in substantially similar tabular format. Moreover, one "brain-dumper" debriefed by KAPLI and NAM apparently was able to recall the precise age of the one of the hypothetical "clients."

---

[4] Two screenshots of NAM's March 10, 2011 lecture displaying this question are collectively attached hereto as Exhibit C.

71.   The first quarter 2011 administration of the Uniform CPA Examination also featured the following question:

**Redemption C Corporation Stock**

**Able Co., a C corporation, has four individual shareholders, Anchor, Blank, Link, and Erode. The shareholders are unrelated except for Link, who is Erode's father. The company plans to make an offer to redeem shares of stock from only one shareholder, but only after calculations are made for the individual shareholders indicated below. Assume only after calculations are made for the individual shareholders indicated below. Assume that the redemption, except for the facts below, would be treated as a dividend.**

**Ownership in Able Co. is summarized as follows:**

|  | Anchor | Blank | Link | Erode | Total |
|---|---|---|---|---|---|
| Number of shares owned | 1,000 | 2,000 | 2,000 | 5,000 | 10,000 |
| Purchase price per share | $30 | $25 | $20 | $35 | |
| Current ownership percentage | 10% | 20% | 20% | 50% | |
| Shares to be redeemed | 200 | 600 | 0 | 1800 | |

**Assume that Able Co.'s current and accumulated earnings and profits exceed the total amount of the redemption proceeds.**

**For each potential redemption below, enter the requested amount in the associated shaded cell. When entering a shareholders' ownership percentage, it must be entered as a decimal rounded to four places (e.g., 12.34% should be entered as .1234)**

**For a shareholder's tax basis per share in the remaining shares owned, enter the amount rounded to the nearest cent (e.g., $6.321 should be entered as $6.32). Enter all amounts as positive values. If a value is zero, enter a zero (0).**

| Potential redemption | Ownership percentage after redemption | Amount and treatment of distribution | | Basis per share in remaining shares |
|---|---|---|---|---|
| | | Dividend | Sale or exchange | |
| 600 of Blank's shares are redeemed for $38 per share | | | | |
| 1,800 of Erode's shares are redeemed for $50 per share | | | | |

During his March 10, 2011 lecture to KAPLI students, NAM presented the following question, which is substantially similar in content and format to the foregoing question from the Uniform CPA Examination administered during the first quarter of 2011[5]:

**Stock Redemption**                                    : **KAPLI**

**Stock Redemption**

| | A | B | C | D | Total |
|---|---|---|---|---|---|
| **Stock** | | | | | |
| **Stock Basis** | | | | | |
| **Ownership (%)** | | | | | |
| **Stock Redemption** | | | | | |

**Stock Redemption**

| | Ownership percentage (%) | Dividend Amount | Sales Amount | Stock Basis Total |
|---|---|---|---|---|
| **A** | | | | |
| **D** | | | | |

Both of the foregoing questions are presented in a substantially similar tabular format, with each including a lower 4 x 4 open grid.  The information most critical to the required calculation is displayed in the column and row titles, which are also strongly similar as between the copyrighted and infringing versions.  The differences between the copyrighted and infringing materials are trivial; every Uniform CPA Examination candidate would understand that "stock" and "shares" are synonymous terms and so would have been recalled by a "brain-dumper" synonymously.

---

[5] A screenshot of NAM's March 10, 2011 lecture displaying this question is attached hereto as Exhibit D.

72.    The Uniform CPA Examination administered during the first quarter of 2011 contained the following question concerning taxation of trust distributions:

**Income Taxation of Trusts**

**The fiduciary of two separate simple trusts engaged you to prepare Form 1041,** *U.S Income Tax Return for Estates and Trusts.* **The fiduciary provided you with the following information for the Barker Trust and the Link Trust for year 2.**

| A | B | C |
|---|---|---|
| | Barker Trust | Link Trust |
| Treasury note interest | $0 | $12,400 |
| Interest earned on certificates of deposit | 6,200 | 0 |
| Tax-exempt interest income | 0 | 8,100 |
| Dividend income | 0 | 16,200 |
| Long-term capital gain | 0 | 11,400 |
| Short-term capital gain | 5,600 | 0 |
| Short-term capital loss | 0 | 2,000 |
| Fiduciary and accounting fees | 3,200 | 4,600 |

The fiduciary also provided the following information relating to the trust:
Each trust has a sole-individual beneficiary.
Each trust is required to distribute its current accounting income annually.
Each trust is allowed a $300 personal exemption.
In the Link Trust, $1,200 of expenses is allocable to tax-exempt interest.

**In the shaded cells in Columns B and C, enter the amounts for each trust item shown in Column A. Enter all amounts as positive values. If an amount is zero, enter a zero (0).**

| A | B | C |
|---|---|---|
| Trust items | Barker Trust | Link Trust |
| Income required to be distributed to each beneficiary | | |
| Trust distributable net income | | |
| Trust income distribution deduction | | |
| Trust taxable income | | |

NAM's March 10, 2011 lecture also contained a question regarding trusts[6]:

**Simple Trust**                                                    **: KAPLI**

| | Simple **Trust** A | Simple **Trust** B |
|---|---|---|
| **Dividend Income** | | |
| Taxable **Interest** Income | | |
| **Tax-Exempt Interest Income** | | |
| **Capital Gain to** Corpus | | |
| Administrative Expense | | |
| **Fiduciary Fees-** Deductible | | |

**Simple Trust**

| | **A** | **B** |
|---|---|---|
| Taxable **Income** before **distribution** | | |
| **Distributable net income** | | |
| **Taxable income To** beneficiaries | | |

These questions are yet another example of KAPLI and NAM copying the AICPA's specific tabular format and content.   The fictionally client-named "Link" and "Barker" Trusts in the AICPA question are interchangeable with KAPLI's Simple Trusts for clients "A" and "B."   The KAPLI question also contains the vast majority of the AICPA's row titles.

---

[6] Two screenshots of NAM's March 10, 2011 lecture displaying this question are collectively attached hereto as Exhibit E

**F.**     **Continuing infringing activity and maintenance of "brain-dumps" in KAPLI binders.**

73.     KAPLI's and NAM's infringing activities continue to the present.  On May 17, 2011, KAPLI staffer, and NAM's cousin, Woo Yong Nam, told the Kroll undercover investigator by telephone that KAPLI had been providing weekly live online lectures, which had been uploaded to the KAPLI website, except for certain portions containing what he called "sensitive information," which were not on the website.  The portions containing "sensitive information," he said, could only be viewed by students at the New York branch.  The undercover investigator asked whether the "sensitive information" pertained to information about the 2011 Uniform CPA Examination, and Woo Yong Nam replied in the affirmative.

74.     On May 23, 2011, a remarkable event occurred at the KAPLI offices: the undercover investigator was actually shown binders which contain the "brain-dump" comments of KAPLI test-takers so that he could study directly from them.

75.     The undercover investigator was present at the KAPLI office in New York on that occasion to view what had been described as the "sensitive information" about the 2011 Uniform CPA Examination, without knowing precisely what to expect.  While waiting for Woo Yong Nam to burn DVDs containing the "sensitive information" so that he could view them in the office, the undercover investigator was shown into one of the classrooms.  As he was walking into a classroom, he saw a thick plastic binder labeled "FARE" on a round table out in the open (FARE is the abbreviation for Financial Accounting and Reporting Examination, which is one of the four sections in the Uniform CPA Examination).  Under that label were written warnings in Korean that the binder could only be accessed at KAPLI and "should never be taken outside, borrowed or copied."  The undercover investigator opened the cover of the ringed binder and saw numerous documents pertaining to post-examination comments which appeared from their

33

content to have been submitted by individuals who took the "FARE" section of the AICPA examination on dates varying from 2007 and 2011.  The undercover investigator copied several comments, which were written in Korean, and which appeared to disclose questions on the Financial Accounting and Reporting (FAR) section of examinations given in August 2010, November 2010, and May 2011.

76.     Woo Yong Nam told the undercover investigator that KAPLI students were free to access the binder at KAPLI.  When the undercover investigator asked if there were any other binders containing post-examination comments, Woo Yong Nam opened one of the lower drawers to a metal cabinet behind the administration desk and showed the undercover investigator another binder; this one contained what appeared to be post-examination comments regarding the Regulatory (REG) section of the examination.

**G.     Likelihood of flight from the jurisdiction of this Court -- KAPLI and NAM's connections to Korea and tenuous financial condition.**

77.     There is substantial concern that, once he is alerted to the pendency of this action, NAM may flee this jurisdiction and the United States, and that KAPLI may fold its United States operations in favor of its South Korean operations.   These concerns are based in part on the ties both NAM and KAPLI have to South Korea and the admitted tenuous financial condition of KAPLI.

78.     NAM has strong ties to South Korea, where he continues to do work and where he resides for extended periods.  For example, during NAM's March 7, 2011 lecture in KAPLI's New York office, the undercover investigator learned that NAM would be away until May 2011, and NAM confirmed during the on-line lecture of March 10, 2011 that he would be going to South Korea in April 2011.

79.    In addition, on February 15, 2011, the undercover investigator was advised at the KAPLI offices in New York by a staff member that many KAPLI lecturers, including NAM, occasionally go to South Korea to teach AICPA courses at Sogang University.

80.    Further, on February 21, 2011, at a Business Law course lecture which the undercover investigator attended in the New York office of KAPLI, NAM stated that he has worked as an in-house counsel for SK Global in South Korea, and that he taught at Ajou University business school in South Korea.

81.    Moreover, on February 28, 2011, at a Business Law course lecture which the undercover investigator attended at the New York office of KAPLI, NAM stated that he had recently been appointed as a professor at Sogang University's Graduate School of International Studies.

82.    In an effort to determine the present whereabouts of NAM, on May 27, 2011, the undercover investigator telephoned a number associated with an address for an individual named Kwang Woo Nam in Leonia, New Jersey, which was obtained from a national identifier database maintained by an independent vendor.  The undercover investigator dialed the number and asked for Mr. Nam.  A male answered and stated in Korean that Mr. Nam was not there; that he recently bought an apartment in Fort Lee, New Jersey, but was rarely there; and that any correspondence for Mr. Nam should be sent to 199 Christie Heights Street, Leonia, New Jersey 07605.

83.    On February 21, 2011, at a Business Law lecture which he gave in the New York office of KAPLI, NAM stated in the presence of the Kroll undercover investigator that KAPLI has been running a deficit for some time.

84.     As of May 27, 2011, the New York County clerk's office judgment docket book showed an outstanding Warrant filed by the New York State Department of Taxation and Finance against KAPLI based on a judgment for $1,685.09 for taxes, penalties and interest due from a period in 2006.

**H.     Effects of KAPLI and NAM's infringement.**

85.     Defendants have disclosed secure, copyrighted Uniform CPA Examination questions and test items that the AICPA planned to use, and did in fact use, on administrations of the Uniform CPA Examination.

86.     The Defendants do not have and have never had permission to reproduce, publish, display, distribute copies of, or prepare derivative works based on any released or unreleased Uniform CPA Examination questions or other copyrighted Uniform CPA Examination materials.

87.     Defendants' misappropriation, use and distribution of the AICPA's copyrighted materials have at all relevant times been, and continue to be, willful and knowing.

88.     Because Defendants have distributed secure questions and test items copied from actual Uniform CPA Examinations, the AICPA has been required to retire the compromised questions.   The AICPA has been and will be required to modify future Uniform CPA Examination test items and questions that it had planned to use for future administrations of the Uniform CPA Examination.

89.     Defendants' conduct threatens the integrity of the CPA licensing process on a national and global basis and, absent injunctive relief, will compromise the integrity of future Uniform CPA Examinations.

## COUNT I
## (Copyright Infringement)

90.     The AICPA incorporates by reference the allegations contained in paragraphs 1 - 89 as if fully set forth herein.

91.     Each version of the Uniform CPA Examination is an original work of authorship that is copyrighted under the laws of the Unites Sates on creation.  The AICPA owns the copyright in each of these Uniform CPA Examination test items and in the questions and answers contained therein.

92.     Under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the AICPA enjoys exclusive rights with respect to the Uniform CPA Examination test items and the questions and answers contained therein, including the exclusive rights to reproduce, distribute, publicly perform, display and create derivative works based on the test items and questions and answers.

93.     The AICPA has been issued certificates of registration by the Register of Copyrights for the Uniform CPA Examination, as described in paragraph 26, above.

94.     Defendants have not been authorized to reproduce, publish, distribute copies of, or prepare derivative works based on any portion of any of these Uniform CPA Examination test items or questions or answers, or any other copyrighted AICPA works.

95.     Defendants have infringed the AICPA's copyrights in numerous Uniform CPA Examination test items, including some or all of the test items listed in paragraph 26, above and the questions and answers contained therein, by copying, reproducing, distributing, publishing, and/or displaying the foregoing copyrighted materials, or derivations thereof, without permission or authorization from the AICPA.

96.     Defendants have willfully infringed and are continuing to infringe the AICPA's copyrights by copying, reproducing, distributing, publishing, preparing derivative works from, and displaying copyrighted Uniform CPA Examination questions, or derivations thereof.

97.     Defendants' actions, as alleged above, have affected the public interest and have the potential for repetition.

98.     Defendants' infringement of the AICPA's copyrights has substantial financial harm to AICPA, for which the AICPA is entitled to damages and other relief.

99.     Defendants' deliberate and wrongful acts of infringement have caused and will continue to cause great injury and damage to the AICPA, which injury and damage cannot be readily quantified.

100.    As a result of Defendants' conduct, as alleged herein, the AICPA has suffered and continues to suffer irreparable damage, and unless this Court enjoins Defendants from further commission of such acts of infringement, the AICPA will have no adequate remedy at law.

## COUNT II
### (Contributory Infringement)

101.    The AICPA incorporates by reference the allegations contained in paragraphs 1 - 100 as if fully set forth herein.

102.    With knowledge of the infringing activity, Defendants have induced, caused, or materially contributed to the acts of third parties in infringing upon copyrights held by the AICPA.  Among other activities, they have done so by:

        a.      encouraging and/or soliciting others to send to KAPLI, through NAM, questions and answers and other AICPA materials that are protected by the copyrights held by the AICPA; and

b.      distributing through live lectures broadcast over the internet copies of Uniform CPA Examination questions and other Uniform CPA Examination materials that are protected by the copyrights held by the AICPA.

103.    Defendants' acts have harmed the AICPA, for which the AICPA is entitled to damages and other relief.

**COUNT III**
**(Tortious Interference With Contractual Rights)**

104.    The AICPA incorporates by reference the allegations contained in paragraphs 1 - 103 as if fully set forth herein.

105.    All Uniform CPA Examination examinees agree to comply with the AICPA's testing policies as a condition of taking the Uniform CPA Examination.  In exchange for being allowed to take the Uniform CPA Examination and having AICPA score their exams and report their scores to the National Association of State Boards of Accountancy (NASBA), examinees agree to comply with the AICPA's testing policies, including the confidentiality provisions which examinees agree to abide.

106.    Defendants have been aware at all relevant times that Uniform CPA Examination examinees are subject to a non-disclosure obligation to the AICPA.  Indeed, non-disclosure requirements were imposed upon NAM when he took the Uniform CPA Examination.  Further, NAM personally advised students that it was illegal to provide him with specific questions they could remember from the actual Uniform CPA Examination at the very same time he solicited students to send any questions they could remember from the Uniform CPA Examination to him by email.

107.    Despite this knowledge, Defendants have encouraged third parties to breach their non-disclosure confidentiality obligations by sending "brain dumps" to, and/or discussing

Uniform CPA Examination questions and answers with, NAM, and perhaps through other means.

108.    The AICPA has been financially harmed by the Defendants' tortious interference with the AICPA's contractual rights, and is entitled to compensatory and punitive damages as a result of those breaches, as well as other relief.

**COUNT IV**
**(Unfair Competition)**

109.    The AICPA incorporates by reference the allegations contained in paragraphs 1 - 108 as if fully set forth herein.

110.    The conduct of Defendants, as alleged above, constituted unfair competition and has wrongfully deprived the AICPA of the benefit of its contractual relations and has harmed numerous Uniform CPA Examination examinees, the Boards of Accountancy of each jurisdiction, and the AICPA by subverting the CPA licensing examination in violation of N.J.S.A. § 56:4-1 *et seq.* and other applicable law.  Defendants have also intentionally interfered with the AICPA's relationships with Uniform CPA Examination examinees in an effort to inflict harm upon the AICPA.

111.    The foregoing conduct is in violation of the accepted practices and procedures of the commercial test preparation industry.

112.    The AICPA has been damaged by Defendants' unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, the AICPA respectfully requests that the Court:

1.     Enter appropriate temporary and thereafter a preliminary and permanent injunctive relief as provided by 17 U.S.C. § 501 *et seq*. and any other applicable law.

2.     Enter an order for impoundment and other relief as provided by 17 U.S.C. § 503 and any other applicable law.

3.     Enter an order for turnover to the AICPA of all infringing materials and articles by means of which such infringing materials may be reproduced as provided by 17 U.S.C. § 503 and any other applicable law.

4.     Enter an order freezing any KAPLI accounts at Bank of America.

5.     Award the AICPA compensatory and punitive damages, including but not limited to,  all profits earned by the Defendants, directly or indirectly, by reason of their infringement of the AICPA's copyrights, plus the AICPA's actual damages resulting from the infringement of the AICPA's copyrights by the Defendants, as authorized by 17 U.S.C. § 504(b) and any other applicable law; or, as an alternative to the AICPA's actual damages and the Defendants' profits, and at the election hereinafter by the AICPA, statutory damages based upon the Defendants' willful infringement in the maximum amount permitted by the Copyright Act, as authorized by 17 U.S.C. § 504(c) and any other applicable law.

6.     Award the AICPA interests, costs, and reasonable attorneys' fees, as provided by 17 U.S.C. § 505 and by any other applicable law.

7.     Enter an order requiring that Defendants permit the AICPA or the AICPA's designated representative to attend or otherwise monitor Defendants' commercial Uniform CPA

Examination review operations to ensure compliance with the terms of the preliminary injunction.

8.      Enter an order requiring Defendants to provide an accounting.

9.      Award the AICPA such other legal or equitable relief as the Court deems just and proper.

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiff American Institute
of Certified Public Accountants*

By: _____
     GERARD P. NORTON
     ALAIN LEIBMAN
     JOSEPH SCHRAMM, III

Dated: June 15, 2011

## VERIFICATION

I hereby verify that I am the Director of Examination Development and Operations of American Institute of Certified Accountants, plaintiff in this action.  All of the above statements are true the best of my personal knowledge, with the exception of the statements set forth in paragraphs 4, 7, 8, 11, 12, 39, 42 – 66, 73 – 76, and 78 – 84 which are supported by the Declarations of Daniel E. Karson and Junil Lee, both of Kroll Associates, submitted herewith. The statements set forth in paragraphs 4, 7, 8, 11, 12, 39, 42 – 66, 73 – 76, and 78 – 84 are supported by the Declarations of Daniel E. Karson and Junil Lee because those individuals conducted an investigation of KAPLI Inc. and Kwang Woo Nam and therefore have personal knowledge of certain of the facts alleged herein, of which no individual employed by the AICPA has personal knowledge.

Under 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: June 15, 2011

Michael A. Decker

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiff, American Institute of Certified Public Accountants knows of no other arbitration or lawsuit involving this matter, nor is any to Plaintiff's knowledge contemplated, and Plaintiff knows of no other person who should be joined at this time.

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiff American Institute
of Certified Public Accountants*

By: _____

GERARD P. NORTON
ALAIN LEIBMAN
JOSEPH SCHRAMM, III

Dated: June 15, 2011

## JURY DEMAND

Plaintiff, American Institute of Certified Public Accountants hereby demands a trial by jury on all causes of action so triable.

**FOX ROTHSCHILD LLP**
*Attorneys for Plaintiff American Institute
of Certified Public Accountants*

By: _____

GERARD P. NORTON
ALAIN LEIBMAN
JOSEPH SCHRAMM, III

Dated: June 15, 2011

44

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C



# EXHIBIT D



# **<u>EXHIBIT E</u>**



